May it please the Court, I'm Lerndt Powell arguing on behalf of the Pellant v. Rodney Class. I'd like to reserve two minutes for rebuttal. The Second Amendment requires vacature of Mr. Class' conviction for two reasons. First, Maryland Avenue is not a sensitive place. But the Capitol of the how about the Capitol of the United States? Is that a sensitive place? The Capitol building itself is a sensitive place. Okay. So how far beyond the Capitol do you go? How about the 20 feet beyond the Capitol? Is that a sensitive place? There is a fair chance that would be, Your Honor. So We're a thousand feet here, but we're in this place where the people who work in the Capitol park. Yes, it is. There are signs there, permit parking only, right? Yes. The signs indicate permit parking only. And the parking spots are reserved for House employees to park in, at least during the time that Mr. Class parked there. Okay. But again Your question is, you're asking us to consider whether the parking place for the employees of the Capitol, a sensitive place, whether that extends to whether the sensitivity of the Capitol extends to where the House employees park. I would say that the government is asking you to decide that it is. That's the issue. Are you saying that the regulation in question, the law in question, Your Honor, is invalid in the first instance under strict scrutiny under the Second Amendment? Yes, Your Honor. So you would not have us reach the exact question that the presiding judge is suggesting? Yes, Your Honor. We believe that the sensitive place question can be avoided entirely because this Court recognized in Heller 2 that even when an area is a sensitive place, there is merely a presumption that a gun regulation is valid. That presumption can be overcome when the So it's not the end of the inquiry. It's the beginning of the inquiry. Under Heller, that's the first question we have to answer, is whether this is a sensitive place. Yes. It's a two-step inquiry. We start by asking whether it's a sensitive place, and then we look to tiers of scrutiny. But, again, in this instance, because there's more than a diminutive effect, even if the government could establish this is a sensitive place, any presumption would be overcome. It would still be a strict scrutiny question as to whether this was, assuming they meet the first step of strict scrutiny, that it is a compelling interest. But they would still have to say that this is narrowly tailored and that it is the least restrictive. Am I careful in making your argument there, Counselor? Yes, you are. Yes, you are, Your Honor. And we do think that this is a substantial burden on Mr. Klaas. How is it a substantial burden? So Heller, too, drew a distinction between regulations that merely govern the, say, manner one can use a firearm from those that effectively disarm an individual. And here there's effective disarmament because Mr. Klaas was Right. It's a total ban. It's a total ban. But after Wren, he can go in a lot of places in D.C. with his guns. He just can't go to the Capitol. So Wren, of course, does point out that a substantial burden can – is not that – even a total ban is not a substantial burden when the regulation is limited to discrete parcels that can be avoided, allowing an individual to preserve his rights undiminished. But in this instance, there was no way for Mr. Klaas to know that. Absolutely. And you are not on this specific instance. Under the statute as it's written, the limits of Capitol grounds extend how far from the Capitol? Certainly over 1,000 feet. The entire area is nearly 300 acres. Some parts of the Capitol grounds are not even contiguous with the rest of the area. It includes major thoroughfares. It does. And, in fact, this road is effectively a thoroughfare. There's a point in the – That road ends up there at the Capitol. You're not going to get far saying that one's a thoroughfare, are you? It does reach the Capitol, but then First Street – Maybe I know too much, but when you drive in Maryland Avenue and you get to Third Street and you look across, if you don't turn left, you're going to be turning into what's essentially an Indian street, aren't you? The government's briefing at one point notes that you actually can reach Constitution Avenue if you – they don't note that it's First Street, but you can tell by reference to judicially noticeable maps that you don't reach a true dead end. How many buildings are within that described area that the statute provides you as the Capitol grounds? I can't recall at this moment. I think it might be around 20. Are all of them legislative buildings to your knowledge? No, Your Honor. For instance, the Botanic Gardens are within the Capitol grounds, and they're not a legislative building. But would we have to decide the case based on the entire Capitol grounds, or could we decide the case based on this stretch of Maryland Avenue? This is an as-applied challenge, so your inquiry should be focused on Maryland Avenue. And where he was parked, that was a parking space that was reserved for House staff. Is that right? That's right, Your Honor, but we don't think that is critical to the analysis. So, for instance, if Mr. Class were bringing a First Amendment claim, if he parked in the same spot and had a pickup truck rather than a jeep, he was passing out pro-Second Amendment pamphlets. But the statute was one that said you specifically cannot pass out pro-Second Amendment propaganda. That statute would be invalid as viewpoint discrimination, even though the government can prosecute him for not parking in that spot. Can I just say one more thing? So you are conceding that we should not look at the entire range of the statute and deciding it's validity under the Sixth Amendment? Or did I misunderstand your response? It's one of those. It's an as-applied challenge. So this is an as-applied and not at all a safety check. That's correct, Your Honor. Right. And on the as-applied part of it, so it's as-applied, and we could define as-applied in various ways. But one way to think about as-applied is as-applied to Maryland Avenue, which is a zone in which parking is restricted to Capitol staff. That is one feature of it, but there are many other features that are also. Right. That's one. Yeah. Can I ask you a question just doctrinally about the setup? So in answer to the initial questions from my colleagues, you indicated that strict scrutiny would apply here. And would that be true? Would strict scrutiny also apply if we were talking about the Capitol Building itself? No, Your Honor. So as we, of course, touched on earlier, even a total disarmament is not a substantial burden when an area is easily avoided and the Capitol Building is easily avoided. You don't need a sign. Of course, there is a statute that says in any event the government. Well, aside the sign, because that has to do with notice and potentially your vagueness challenge. But in terms of the applicability of strict scrutiny, you say the Capitol Building would not be an occasion for applying strict scrutiny, but this stretch of Maryland Avenue is an occasion for applying strict scrutiny. Yes, Your Honor. And the relevant distinction is? I don't mean to fight your hypothetical, but the notice point is key. Okay. As Wren noted, the question is whether an individual can avoid the area and preserve his rights. And when a street is just like all the other streets in this district, there is no reason that an individual knows he has to stay away from this area. And that is, functionally speaking, an inability to avoid the area. And let me ask you this. I don't mean to say that I necessarily disagree with your notice point, but suppose I disregard the notice point. If I disregard the notice point, is there any basis for drawing a distinction between an as-applied challenge to this stretch of Maryland Avenue and an as-applied challenge to the Capitol Building with respect to whether strict scrutiny would apply? Yes, Your Honor, because Maryland Avenue is not a sensitive place in the first instance, whereas the Capitol Building is. So if it's not a sensitive place but you can avoid the area, our read of the relevant case is that intermediate scrutiny would still apply. And even under that standard, this regulation must fail. But what about with the Capitol Building itself? So is your reading of that stretch, that portion of Heller, is that if it qualifies as a sensitive place itself, then what? If it qualifies as a sensitive place itself, then there is a presumption that any gun regulation is valid. Right, so it's just a presumption. So why wouldn't strict scrutiny still apply? Because then you ask whether the presumption is overcome by looking at whether there's more than a de minimis burden. Initially, one would say yes, because there's a complete ban, but then one would say, well, but there's an exception for the fact that this Capitol Building can be avoided. But so can Maryland F. Not in practice, because there's no indication that this street is any different from all the others. But that just gets back to the notice point. That is part of it. And I'd like to, you know, note that It's consistent with the record to say that the parking there is perpendicular parking, like a parking lot, as opposed to being parallel parking, as would be the norm on a simple street. It is true that this is Isn't there also a sign that it says private parking? It says permit parking only. Permit parking, excuse me. Permit parking. So isn't that distinguishable from other streets in the area? No, Your Honor. There are, in fact, many streets in this district where there is perpendicular parking and a very large number of streets in the district say permit parking only, whether it's, you know, for residents or for government employees, what have you. These are very common features. They don't give an individual any sort of sense. Suppose the court or I were to believe that this statute cannot survive a facial challenge, as opposed to an as-applied challenge. Is this case before us one in which we could not decide that? Yes, Your Honor. There's only been an as-applied challenge here. So I'd also like to point out on the notice idea that this is not a new, a novel approach to constitutional law. In the First Amendment context, in the United States v. Grace, the Supreme Court considered whether the sidewalks around the Supreme Court building were a part of the, were a public forum or not, whether First Amendment rights extended there. And there wasn't a question that the statute made it clear that this was an area where the First Amendment activity was prohibited, but the Supreme Court looked to features like the fact that the sidewalks were the same material as all other sidewalks in the area, whereas the plaza of the Supreme Court is made of marble. And they looked at the fact that there were barriers, metal barriers, that sort of indicate one part of the Supreme Court grounds is special and another is not. The Capitol grounds have many of those sorts of features at other places. The Capitol grounds often have parking where you have to go through a gate before you can enter, but not this street. This street is really just like all the others. I'm sorry to interrupt you and back you up a little bit. Help my thinking on this one. And I want to go back to the hypothetical of the Capitol. We're just talking about the Capitol. So the Capitol is a sensitive place. No argument about that, right? Is it not the case that from Heller that we learn that, therefore, there's no Second Amendment right at all in a sensitive place? Why do we engage in any inquiry about burdens when there's no right at all? At Heller, too, this court explored that language a little bit, and it did go along the lines of your thinking, that when there is historical regulation, there is a sense that there must not be Second Amendment rights in this area. What's wrong with that thinking? Well, the footnote in Heller 1 indicated that it was still just a presumption that the regulation was valid, that, in fact – So you don't might have a Second Amendment right in the Capitol, according to the footnote. Is that what you're saying? Yes, yes. But in that instance, it's easy to get around the issue because, again, you know where the Capitol is. You have a clear sense that there are metal detectors, there are guards, there are signs. You shouldn't go in that area. You can avoid it. Not so in this area. My question is more about just the analysis that the Supreme Court has called upon us to make. If we find that a place is a sensitive place, why do we then engage in any burden inquiry? Why is it the result of that finding that it's a sensitive place that there is no Second Amendment right in that place? Don't get involved in any analysis of burden. There is no right there. What's wrong with that thinking? So on – Heller 1, you know, again, indicates that history can be a guide to determining whether Second Amendment rights exist in an area. But it's cautious to encourage courts to look further. And that is why Heller 1 said that there was a presumption of validity, not a guarantee of validity. And that's why this court in Heller 2 specifically said if there's more than a de minimis effect on Second Amendment rights, that we do continue to the scrutiny analysis. Can I ask you then, would your argument mean that for the Gun-Free School Zones Act, which, as you probably know, bars the possession of a firearm within 1,000 feet of a school zone, then would it mean that that law is subject to strict scrutiny and would be struck down? As applied to areas that are 1,000 feet from a school zone? No, Your Honor. There, there is, of course, a mens rea requirement in the statute, which is quite different from this one. Again, it's sort of a functional way to avoid getting tripped up into losing your Second Amendment rights, because if you don't have the knowledge, you are not going to be violating the statute. So then it's still, then that's still predicated on your notice, kind of understanding of where you are point, as opposed to a notice unrelated point about the scope of the Second Amendment. I'm sorry, could you? So, in other words, the reason you're saying that the Gun-Free School Zones Act wouldn't pose a constitutional problem is because of a mens rea requirement in the statute. That is part of the, part of the reason why. Also, it's much more likely that statute would pass any level of scrutiny applied, because there, Congress made findings, and, of course, the Supreme Court recognized that schoolyards are a sensitive place to start with. But they also said that about government buildings. Right, but in the school context, of course, we're already outside of the building. But so is the Gun-Free School Zones Act, because it's within 1,000 feet of a school zone. It's not within the school. It's within 1,000 feet of a school zone. So I assume you'd make the same argument that 1,000 feet from a school zone is not itself a sensitive place. But intermediate scrutiny would end up applying, again, because of the fact that it's an avoidable area. If there are no further questions, I'll close. No, no, I'm not certain. Oh, sorry. So I'm curious why you didn't raise the mens rea requirement about the statute. This is a strict liability statute. Those are suspect. Yes, we also raise a vagueness challenge. The vagueness challenge, of course, turns on three main factors. First, it's the fact that this is an especially searching inquiry. The conducted issue threatens to inhibit constitutional rights. In fact, we believe it does inhibit constitutional rights. And it does so through the imposition of criminal penalties. What I was getting at is there is a mens rea inquiry here, but it hasn't been raised. Have you forfeited that? No, Your Honor. We raised the mens rea issue. No, but you didn't. I think maybe what Judge Griffith is getting at is the distinction between the statute, whether a mens rea element is the proper way to construe the statute, and whether there's a constitutional vagueness problem with it. And as to the former, I don't understand you to have alleged that the statute itself requires proving mens rea. Well, it does. Everybody agrees it requires proving mens rea with respect to carrying. The question is whether it requires proving mens rea with respect to where you are on the capital grounds. And as to that, I didn't understand you to have raised an argument that the statute should be construed to require mens rea with respect to being on the capital grounds, as opposed to the constitutional vagueness challenge. That's correct, Your Honor. We have focused solely on the vagueness challenge. The government argued strenuously below that there is no mens rea requirement attached to knowledge of the capital grounds, and so this is a fight about. That's a tougher haul for us, isn't it, to say due process clause requires a mens rea requirement? We'd have to strike down a lot of statutes. Whereas if we were just focusing on this statute, a strict liability statute, it would be a little easier for us to get there. Well, Your Honor, we think this is a truly exceptional statute. The statute begins by saying — What do you mean? In case, why didn't you make a facial challenge instead of making a flag challenge? I'm sorry. You're not the client, but why didn't your client say? So, Your Honor, we acknowledge that large portions of the capital grounds are areas where the gun regulation is properly applied. In the Capitol Building, the area — Nonetheless, if you're under strict scrutiny and you regulate a whole lot more than those areas, isn't there a problem with the statute? There could be, Your Honor. That being the case, why wasn't there a facial challenge? Well, so we think that it's not necessary to consider a facial challenge, given that the question becomes harder when there are lots of — I'm going to ask the same question of your opposing counsel, and it wasn't prompted just by your position here. I have looked for this, but is there any case that says that if a statute is facially unconstitutional, but an included statute would be constitutional, and this conduct falls within that included, what do we do then? Can we uphold it as applied, even if the statute would be unconstitutional? That comes up in the vagueness context generally. This is not precisely in the vagueness context here. But in a strict scrutiny context, it might well be held that a statute that outlaws composition in a sensitive place, properly defined, is constitutional. However, if the statute is so overbroad that it does not survive strict scrutiny, but you are nonetheless within the area that could have been regulated, what is the court supposed to do then? And I haven't found a case outside the vagueness that tells me this. Your Honor, I believe the answer is that it would be upheld, although this is not an issue I have looked into recently. I have looked, and I have not found a case that says something one way or the other on this. But I thought — right. I think your instinct — is your instinct born of the idea that if there's not a facial challenge before the court, then the challenge that is before the court is the as-applied one, and then we just have an up-or-down vote on whether it's constitutional as-applied. That's correct, Your Honor, although there's also, of course, to consider that the point of overbreath challenges is to prevent chilling of conduct. And so there is a lot of latitude given to raise those sorts of challenges. When there's an overbreath challenge before the court. Yes. If there's not one, then — We have not briefed an overbreath challenge. Okay. Thank you. Thank you very much. Good morning. Thank you. May it please the Court. Lauren Bates on behalf of Appellee of the United States. The challenge here before the court is an as-applied challenge, and that is because appellant concedes that they could not show that the Capitol grounds statute was unconstitutional in all respects. They concede that it is constitutional because the government buildings, the Capitol building, and the other government office buildings, which include six congressional office buildings, as well as other government-owned buildings in that area, are sensitive places. And they do not offer a compelling reason for this court to conclude that the area where appellant was found with his guns, the Maryland Avenue parking area, is not similarly a sensitive place. And that is because it is an area that is within a government-owned and controlled — strictly controlled — you know, grounds surrounding the Capitol, which is a unique area based on the fact that you have the United States Capitol, the seat of the federal legislature, with 538 federally elected lawmakers there, with their staffs that are housed in six separate buildings separated by distance by open grounds. The United States Capitol in the center, parking — How do you get to 538? I'm just curious. I think it's 535. 535. When the vice president is up there, it's 536. Sorry, we've got 535. Okay. My argument remains the same. You realize the former Senate counsel would be laughing. And then the Maryland Avenue parking area itself is, as appellant concedes, within a thousand feet of the Capitol building itself, is close to one of those office buildings, the Rayburn House office buildings, is surrounded on different sides by the Botanic Gardens, another federally-owned area, is a place that has been designated with signage for authorized permit parking only. So that is a place where the individuals who make the place sensitive, the employees, the congressional staff, park and would be found. It also abuts areas that are designated for protests and demonstrations where there are other people, the citizens who come to the Capitol to express their views on the legislation and the questions that are before the federal legislature, where those individuals are found and where there is also a need to protect those individuals. I'm troubled by the due process part of this. It does seem unfair that Mr. Clash would become a felon based on parking a car in an area that's a distance from the Capitol, that a lot of other things, the Botanical Gardens are there, and there's no sign other than permit parking required. As your friend pointed out, that's true for almost everywhere in Washington, D.C. and yet we're going to make people like that felons? So what there is and what is relevant to a vagueness challenge is that there is a law that has been passed and published that is clear as it is written. But we have the language from Lambert, right? The fact that it's merely passed as law isn't always enough, right? No, but I think it may not always be enough. But when there is no challenge to whether the words as they are written in the law, whether the public law that states Maryland Avenue from 1st to 3rd Street is part of Capitol grounds, when there is no challenge as to whether that is vague, hard to understand, subject to arbitrary enforcement, which there is not a challenge here and I don't think there could be. Which the part you just quoted, Maryland Avenue from 1st to 3rd, that's in the Botanical Gardens part of the statute? That is actually in the Public Law 96-432. Oh, right, right. Which isn't in the text of the statute itself. It is not, but the statute itself says that it can be as amended by future laws. And, you know, in looking at these laws, and I would proffer to the court that they are not that difficult to find. Well, they're also in the notes to the staff. Correct, they're in the notes, depending on which resource you use. Even in Google, the first three sources of the text of the statute include it in one location, Westlaw in the notes. So it's there in writing. It is clear as written. And that is sufficient for purposes of the due process vagueness inquiry here. As this court in Bronstein most recently noted, the inquiry, fair notice, is consonant with the longstanding principles of statutory construction. Citizens are charged with generally knowing the law and what the law means is a function of interpreting the statute. Here, the law is clear. An appellant has not made an argument that the words of the law as written are not clear. So just to be clear, I'm not talking about Westlaw. I'm talking about the United States Code. Correct. So the United States Code itself, and I know that we engage in some heroic assumptions about what citizens are supposed to know about the law. And I don't mean to suggest that these kind of distinctions between Westlaw and the U.S. Code and the U.S.CA and all that is dispositive. But in the number one source for the statutes, it's the United States Code. Correct. And the United States Code itself, the notes to the statute that come after the statute tell you that there's a public law that amended the statute that defines the capital grounds to include the stretch of Maryland Avenue. So, and I will say, I have reviewed looking at the code through a variety of resources. And the way that I have accessed that is I have not gone to the book, because many institutions no longer have the fiscal books. But in all of the manners in which I individually have accessed the code, whether through a legal research tool or through its publication, Congress, you know, it is listed immediately below the text of the statute. And the fact, even if it weren't, that you might have to go through another step to locate the amendments, again, does not make the statute vague. The examples If that were a problem, all of the text codes would be vague. This Court has noted, you know, that you may need to consult legal dictionaries, even opinions interpreting the law. And the fact that you might have to go through those steps does not render clear, unambiguous statutory language vague and constitutionally void for vagueness. An appellant seems to argue that the fact that there's no mens rea requirement is what really renders this statute vague. But appellant has not cited, and I am not aware of a single case that holds that a mens rea requirement is required in all cases in order for a statute not to be vague. No, but in Staples we read mens rea requirement in as a saving construction. Why shouldn't we do that here? Because the language here is clear. And I think the challenge here is not one of statutory construction of what, which would be a challenge that has been waived by the fact that this was a plea agreement. The challenge that has been made is a vagueness challenge about the Let's imagine it hadn't been waived just for our education. What's your response to the argument that, like Staples, we should read a mens rea requirement into this? So my response is, I mean, this has We move from a strict liability statute to one where the government would have to prove that he knew that he was on capital counts. So here, I think, where the statute requires knowledge, or some mens rea, which is the argument that the parties have briefed here, assuming that that is correct. And again, this was not fully addressed in this case. And I think the government could take positions on this. But where there is some mens rea as to the conduct that is involved, and that conduct is carrying or possessing a firearm, I think in the context of firearms, which there is no inherent in every circumstance, the Second Amendment is clear that it does not cover the universe, that there are some types of conduct that falls outside the scope of the Second Amendment, that an individual would be tasked with understanding that when carrying firearms, that is a heavily regulated area, that there are permissible regulations such as registration requirements, also designations, as this court and the Supreme Court recognize, about prohibitions in carrying in sensitive places or based on status, such as felony status, and that there just aren't the same concerns here with this statute, given that backdrop. But regardless, I think that is not the question that is before this court. The question before this court is whether the statute is vague. And where the boundaries. It's clear that the appellant himself, as opposed to the amicus, isn't raising a facial challenge. A facial challenge with respect to the Second Amendment challenge? Yes. I mean, I think that the concessions and statements of position stand for themselves. But I don't think that appellant could raise an as-applied challenge here. Because you could. Well, I'm sorry. I understand that you'd be raising it. It ought to be the position. I'm sorry. A facial challenge. Because to raise a facial challenge, I'm not aware of any cases that have adopted the First Amendment concept of overbreadth and applied that in a Second Amendment question. With respect to scrutiny analysis, if it applies to the Second Amendment, and I understand that that's at least an open question, if it applies to the first step of it, of course, it's concerning government interest. You've got that. The second step is that it is narrowly tailored. And the third step is that it doesn't act overbroadly or it doesn't. If there is a better and narrower way of dealing with it, a more targeted way of dealing with the government interest. Correct. And I may not. So I don't see why he could not raise that kind of challenge. My position is to be able to raise a challenge that this statute is facially unconstitutional, that it's unconstitutional in all respects in which it may be applied, an appellant would have to be able to argue, which has been conceded, for example, that it would be unconstitutional to have the firearms prohibition inside the Capitol building itself. And Ms. Scalia wrote that we do say that it has to be unconstitutional in all respects. We don't really mean that. I'm inclined to agree with you. If the statute is unconstitutional, the fact that you could write a narrower statute that would be constitutional would seem to me not to defeat a facial challenge. I don't know of a case, and I've conceded that to your opposing counsel, that deals with precisely the question I'm asking you. But supposing the statute would fail the strict scrutiny analysis, but a narrower statute could be drawn, that is to say one with a different definition of capital grounds, even though you have to go through tax type analysis to get there. The fact that it could be constitutionally regulated, does that save the statute where it would be unconstitutional under the strict scrutiny? And I may not be fully understanding Your Honor's question, but I think, yes, it would save the statute because that would render the statute not, facially, as in all applications, unconstitutional. And again, this Court is here with the backdrop of presuming that statutes are constitutional and recognizing that it would be here appellant's burden to demonstrate that it was not unconstitutional. And here, I don't think an appellant can meet that burden, even as it applies with respect to the location in which he, his car was parked. If I haven't been perfectly honest so far, I'm being perfectly honest now to say I have much less trouble with the facial, with the as-applied challenge than I do with the possible facial challenge. And I would just submit that that means that the statute is not, would not be facially unconstitutional here. And I think with respect to... And for your purposes as the government, I mean, you have, there's no issue with an as-applied challenge. And if, for your purposes, if it's constitutional as applied to the relevant scope of conduct, which is the possession, the carrying of firearms on this stretch of Maryland Avenue, that's all, from your perspective, we need to decide. That ends the inquiry as it relates to this case, yes. From the government's perspective. And we submit that, you know, this Court can decide that first by determining that the Capitol grounds, specifically the Maryland Avenue parking area, where appellant's car was and the firearms were, is a sensitive place. And therefore, regulation in that area does not regulate conduct that falls within the scope of the conduct that the Second Amendment protects. And that's what the Supreme Court and this Court recognized. And that appellant couldn't show that there was more than a de minimis infringement Can you help me understand why we engage, I know we engage in that inquiry because the Supreme Court's told us to, but why do we engage in the de minimis burden inquiry if we've identified an area where the Second Amendment doesn't apply? So I'm not aware of a case that has found a sensitive place and then found that the appellant or defendant had overcome that presumption. But I think it should be very difficult to overcome that presumption. But I could imagine, hypothetically, a government building that the top three floors of it were, you know, not owned by, not used by the government and instead had been leased out as private apartments and homes and that there would be a question then as to whether the sensitive place designation, which is a longstanding, well-accepted designation of government buildings. Yeah, but I'm saying, why is at the end of the inquiry the sensitive place designation? And once you've found a sensitive place, there is no Second Amendment right there. You don't carry, you don't then engage in an inquiry about whether it's a, what type of burden, whether it's de minimis or not. And I, I mean, I look to, I'm here with the backdrop of what the Supreme Court said in Heller and this Court has said in Heller. But I think here it is a sensitive place based on the use that is made of that place and the type of place it is. And specifically its proximity and location within the Capitol grounds, which I think are unique as compared to almost any other government building. And that a time and place limitation on the right to carry or possess firearms is just not the type of regulation that imposes more than a de minimis restriction on your right to bear and carry arms. Or if this Court were to find the need to move to a level of scrutiny that would require anything more than intermediate scrutiny. Because it is not a complete ban on your ability to carry firearms in self-defense. It is a ban in a very specific location. Well, if we get to intermediate, if it's using intermediate scrutiny, isn't there a bit of a fit problem here? Because there are seemingly identical streets nearby and parking lots nearby that aren't covered. That aren't covered? Well, so the fact that the legislature might not have chosen to regulate something that it could regulate doesn't mean that what it has chosen to regulate is not narrowly tailored and wouldn't survive intermediate scrutiny. That's true, at least under the laws. I understand it. But is it also true that there are similar streets nearby and that there are also streets that are reserved for capital staff parking? So I am not aware of all of the, and I know our record includes that, of all of the areas that are reserved for parking. But here it's undisputed that this area was. And that it is within close proximity, not only to the capital buildings themselves and the office buildings, but also areas that have been designated as places where large numbers of members of the public come to exercise their First Amendment rights, to be present at this government site, to gather, to demonstrate. And the need to protect not only the people who work and do business at the capital, which is staff, but also the dignitaries, the cabinet members who attend hearings there and travel between the different buildings of the capital, but also the citizens who go there, means that this regulation, especially with respect to Maryland Avenue, survives scrutiny. Unless my colleagues have further questions, we have yours. Thank you. Thank you very much. Just one point of clarification. I'll start you off. Just to clarify, you represent Mr. Klass at this point, right? Yes. Even though we've characterized you as an amicus curiae before, at this point you actually represent. That's correct, Your Honor. So we have three quick points to make in rebuttal. First, regarding the vagueness challenge, that one is both as applied and facial. And I encourage, Your Honors, to actually try to Google the Capitol grounds boundaries. Try, as if you were an ordinary person of reasonable diligence, to figure out where these boundaries lie. You'll find a confusing set of maps, and you will have, I think you'll find it essentially impossible to determine, to define public law 96-432. But even if it were sufficient that you can look to the public laws, we think that's actually quite unusual. That alone is not what drives this vagueness challenge. There's also the fact that the statute begins by referring to a 1946 map that excludes Maryland Avenue Southwest, and is then further confused by the fact that the same section that refers you to the 1946 map, although it does say there can be additions to it, includes a reference to the Botanic Gardens that excludes the area where Mr. Klass parked, creating the impression that the addition that has been made to the map is just the Botanic Gardens, and that it is thus safe to park where Mr. Klass parked with a weapon. Regarding the second amendment challenge, the government's whole position relies on essentially mischaracterizations of this area. It tries to describe this area as secure. It is not. There are areas that are secure that have guard posts, et cetera, but not this area. Finally, as this Court considers it. Capitol police patrol that area, though, don't they? Obviously they did. They were patrolling at a time they found Mr. Klass. They do patrol the area, but, of course, police patrol the entire district. And there are no guard posts. There are no signs. This is a publicly accessible street that one can drive on, just like all the other streets in the district. Finally, as this Court goes to consider how to resolve this case, of course, as Judge Srinivasan noted at the beginning, Mr. Klass was pro se before the district court and when this case was initially argued, and that means, of course, that his claims have to be construed liberally. Thank you. Thank you very much. The case is submitted. Mr. Powell, you are appointed by the Court to represent the appellant in this case, and we thank you for your excellent assistance. Stand, please.
judges: Griffith, Srinivasan, Sentelle